IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JOYCE KNAUSS,** | ) |
| | ) |
| **Plaintiff,** | )     16 C 7657 |
| | ) |
| v. | )     Judge John Z. Lee |
| | ) |
| **WENDY'S OLD FASHIONED** | ) |
| **HAMBURGERS OF NEW YORK, LLC,** | ) |
| an Ohio corporation, d/b/a **WENDY'S** | ) |
| and **WENDY'S PROPERTIES, LLC,** a | ) |
| Delaware corporation, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joyce Knauss has sued Defendants Wendy's Old Fashioned Hamburgers of New York, LLC, d/b/a Wendy's and Wendy's Properties, LLC (collectively, "Wendy's"), alleging claims for negligence based on injuries suffered as a result of falling in the parking lot of a Wendy's restaurant. Wendy's has moved for partial summary judgment.[1] For the reasons set forth below, the motion is denied.

### Factual Background[2]

On August 21, 2015, sometime between 11 A.M. and 2 P.M., Knauss arrived at the Wendy's restaurant at 2570 East Dempster Street, in Des Plaines, Illinois, owned by Defendants. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 3, 12, ECF No. 47. Intending to buy a soda and use the bathroom,

---

[1] Knauss's complaint brings negligence claims against each Defendant under both Illinois common law (Counts I and III) and the Premises Liability Act, 740 Ill. Comp. Stat. Ann. § 130, *et seq*. (Counts II and IV). *See generally* Am. Compl., ECF No. 30. While Defendants purport to move to dismiss the complaint in full, *see* Defs.' Mot. Summ. J. at 2, ECF No. 46, the motion does not address Wendy's liability under the Premises Liability Act.

[2] The following facts are not in material dispute except where otherwise noted.

*id.* ¶ 11, Knauss parked in a parking spot located between the first of two drive-through windows and a side entrance to the restaurant, *id.* ¶ 9. The parking lot was busy when she exited her vehicle. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1, ECF No. 54. Before walking toward the restaurant's side door, Knauss looked left and right to make sure no cars were backing out of the parking lot, checked to make sure no cars were coming through the drive-through, and looked out for pedestrians walking through the lot. Defs.' LR 56.1(a)(3) Stmt. ¶ 16; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 3.

Knauss took at least seven steps forward before stepping on the edge of a pothole, losing her balance, and falling. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 17–18; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 14. Although Knauss testified that she is "always cautious" and "looks everywhere" when she walks, Defs.' LR 56.1(a)(3) Stmt. ¶ 20, she did not see the pothole before she fell.[3] Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 13. Knauss remembers looking at the entrance door and at the ground in front of her before falling. Defs.' LR 56.1(a)(3) Stmt. ¶ 19.

Ralph Sesko was the restaurant's Training Store Manager on the day Knauss fell. *Id*. ¶ 23. He measured and photographed the pothole the day after Knauss's fall. Defs.' LR 56.1(a)(3) Stmt., Ex. 4, Sesko Dep. at 67–69, ECF No. 47-4. Knauss's daughter also photographed the pothole the day after the incident. Defs.' LR 56.1(a)(3) Stmt., Ex. 2, Knauss Dep. at 44, ECF No. 47-2. The pothole was approximately 18 to 19 inches long and 10 inches wide, Defs.' LR 56.1(a)(3) Stmt. ¶ 28, and varied from one to 1.5 inches deep, Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 20.

---

[3] Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 13 states: "Knauss did not notice a difference in levels between the pothole and parking lot surface before she fell." Defendants "deny" this statement by asserting that Knauss "did not notice anything with the pavement as far as levels or issues." Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 13, ECF No. 56. This denial simply rephrases Plaintiff's statement. As such, Plaintiff's statement is deemed admitted. *See* LR 56.1(a) ("All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.")

There is conflicting testimony as to the color and conspicuousness of the pothole. According to Sesko, it was plainly obvious and could be avoided. Defs.' LR 56.1(a)(3) Stmt. ¶ 24 (citing Sesko Dep. at 84). Sesko further testified that some of the photographs he was shown at his deposition depicted the pothole as containing gravel that was lighter in color than the rest of the parking lot. *Id.* ¶ 29. Knauss, for her part, described the pothole as blending in with the parking lot surface due to the lack of color differentiation between the pothole and the surrounding asphalt. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12 (citing Knauss Dep. at 100).

Wendy's employees Luis Cordero and Jinga Patel were working at the restaurant's drive-through windows when Knauss fell. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 31, 35. Neither Cordero nor Patel remembered having seen the pothole before Knauss's fall. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 16, 18. Cordero and Patel both testified that the pothole appeared to be the same color as the surrounding parking lot surface in the photograph taken by Knauss's daughter. *Id.* ¶¶ 15, 17. However, Cordero also stated that he would expect patrons to have seen and avoided the pothole, based on an array of photographs shown to him at his deposition. Defs.' LR 56.1(a)(3) Stmt. ¶ 33.

### **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it."

*Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

## Analysis

Knauss has sued Wendy's for negligence, seeking to recover for the injuries she sustained as a result of falling in Wendy's parking lot. To prevail on a negligence claim under Illinois law,[4] a plaintiff must prove "'(1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury proximately caused by the breach.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018) (quoting *Wilfong v. L.J. Dodd Constr.*, 930 N.E.2d 511, 519 (Ill. App. Ct. 2010)).

Wendy's offers two arguments in support of its motion for partial summary judgment. First, it contends that Knauss has failed to raise a genuine issue of material fact with regard to the element of duty, arguing that the pothole was an "open and obvious" danger over which Wendy's had no duty of care. Second, Wendy's argues that Knauss's contributory negligence bars her from any recovery.

### I.     The Open and Obvious Doctrine

"In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." *Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008) (collecting cases). The "open and obvious" doctrine provides a sensible limitation to this general duty of care: landowners are "'not ordinarily required to foresee and protect against

---

[4]     Both parties cite Illinois law in their summary judgment briefs. Accordingly, the Court applies Illinois substantive law in reviewing Wendy's motion for partial summary judgment. *See Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) ("[T]he operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits." (citation and quotation marks omitted)).

injuries from potentially dangerous conditions that are open and obvious.'" *Dunn*, 880 F.3d at 906 (quoting *Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996)).[5]

"Whether a duty exists is a question of law to be determined by the court." *Id*. However, whether a condition is open and obvious "[o]ften . . . 'may present a question of fact.'" *Id*. (quoting *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014)). For example, "where there is a dispute about the condition's physical nature, such as its visibility, the question of whether a condition is open and obvious is factual." *Wilfong*, 930 N.E.2d at 520 (collecting cases). By contrast, "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Dunn*, 880 F.3d at 906 (quoting *Bruns*, 21 N.E.3d at 690).

Wendy's argues that the pothole in its parking lot was open and obvious as a matter of law because there is no dispute as to the pothole's dimensions and location. Defs.' Mem. Supp. at 9, ECF No. 48. In response, Knauss contends that there is a dispute of material fact with regard to the pothole's visibility. Pl.'s Mem. Opp. at 4, ECF No. 55. As Knauss sees it, the lack of color contrast between the pothole and the surrounding parking lot and the fact that several Wendy's employees had not noticed the pothole before Knauss's fall provide evidence that the pothole was not visible, thus creating a dispute of material fact as to the pothole's visibility. *Id*. at 6.

Illinois courts have found that a lack of color differentiation between a defect and the surrounding surface is sufficient evidence from which a reasonable jury could find that the defect was not open and obvious. For example, in *Alqadhi v. Standard Parking, Inc.*, the plaintiff tripped

---

[5] As Knauss correctly notes, a finding that a condition is open and obvious is "not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014). Rather, it affects the court's application of the "traditional duty analysis" used to assess whether a duty exists. *Id*. "Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Id*. (citing *Bucheleres*, 665 N.E.2d at 836). As the Court does not find that the pothole is open and obvious as a matter of law, the Court declines to address the implications of such a finding at this stage.

on an unmarked 0.75 inch step in a parking garage. 938 N.E.2d 584, 586 (Ill. App. Ct. 2010). The plaintiff testified that the step and the surrounding lot were "all the same color," causing the step to "fuse[ ]" into the surface of the lot and creating an "optical illusion of a flat walking surface." *Id*. The court found that the plaintiff had created a question of fact on which reasonable people could differ as to whether the step was an open and obvious hazard. *Id*. at 588; *see also Buchaklian v. Lake Cnty. Family Young Men's Christian Ass'n*, 732 N.E.2d 596, 546 (Ill. App. Ct. 2000) (finding that the "lack of significant color contrast" between a defect and the surrounding area could support a "reasonable inference" that the defect was difficult to discover).

In addition, Illinois courts have held that the fact that others situated similarly to the plaintiff had not previously noticed the defect is evidence that the defect may not have been open and obvious. For instance, in *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, the plaintiff, a billboard painter, was electrocuted by a high-voltage electrical wire hanging approximately 24 to 30 inches above the billboard that the plaintiff was painting. 594 N.E.2d 313, 314 (Ill. 1992). The fact that other individuals who had worked on the billboard had been "unaware of the power line's presence" before the plaintiff's injury created a "question of fact as to whether or not the danger was open and obvious." *Id*. at 319; *see also Buchaklian*, 732 N.E.2d at 546 (finding that whether a shower mat with a raised corner constituted an open and obvious hazard was a question of fact because other gym patrons had not noticed the defect).

Here, Knauss has presented evidence from which a reasonable jury could find that the pothole was not open and obvious. First, there is a material dispute as to the presence or absence of a differentiation in color between the pothole and the surrounding parking lot. Knauss testified that the pothole was the same color as the parking lot. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12. Similarly, Wendy's employees Patel and Cordero both stated that the pothole appeared to be the same color as the surrounding parking lot surface in a certain photograph. *Id*. ¶¶ 15, 17. On the other hand,

6

Sesko testified that the pothole was lighter in color than the rest of the parking lot. Defs.' LR 56.1(a)(3) Stmt. ¶ 29. This conflicting testimony establishes a "dispute about the physical nature of the condition" that entitles Knauss to present the question of whether the pothole was open and obvious to the jury. *Alqadhi*, 938 N.E.2d at 588; *see also Nat'l Advert. Co.*, 594 N.E.2d at 319.

Second, Knauss has presented deposition testimony that neither of the two Wendy's employees staffing the drive-through windows at the time of Knauss's accident had noticed the pothole prior to Knauss's fall. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 16, 18. This evidence further supports Knauss's claim that the visibility of the pothole is in dispute. *See Nat'l Advert. Co.*, 594 N.E.2d at 319; *Buchaklian*, 732 N.E.2d at 546.

The cases cited by Wendy's do not mandate a different conclusion. In particular, Wendy's reliance on *Wade v. Wal-Mart Stores, Inc.* is misplaced. 39 N.E.3d 1141 (Ill. App. Ct. 2015). In *Wade*, the plaintiff contested Wal-Mart's claim that a pothole was undisputedly open and obvious by characterizing the pothole as a "subtle crack." *Id.* at 1145. Nevertheless, the court applied the open and obvious doctrine as a matter of law because none of the "pleadings, depositions, affidavits, or other documents filed" in the case supported the plaintiff's characterization. *Id.* at 1146. Unlike the plaintiff in *Wade*, Knauss has provided substantial evidence supporting her characterization of the pothole and is entitled to present her evidence to the jury. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 12, 15–18.

Lastly, Wendy's argues that the fact that the parties agree that photographs of the pothole accurately depict the pothole establishes that there is no dispute that the pothole is open and obvious. Defs.' Reply Mem. Supp. at 3, ECF No. 57. This argument misunderstands Knauss's argument. Knauss is not claiming that there is a dispute over whether the photographs accurately depict the pothole; she is arguing that there is a dispute over whether the pothole would have been obvious to a reasonable person walking across the parking lot. Pl.'s Mem. Opp. at 6. Certainly,

7

photographs in which the pothole is clearly visible are evidence that would support Wendy's defense, but the photographs in and of themselves do not preclude a factual finding at trial that the defect was open and obvious in light of the other evidence Knauss presents. *See Nat'l Advert. Co.*, 594 N.E.2d at 319.

In sum, considering the evidence as a whole and drawing all reasonable inferences in Knauss's favor, the Court concludes that a reasonable jury could find that the pothole was not open and obvious. As such, the open and obvious doctrine does not entitle Wendy's to summary judgment.[6]

## II. Contributory Negligence

Under Illinois law, "a plaintiff cannot recover if the 'contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought.'" *Coleman v. Wal-Mart Stores, Inc.*, No. 1:14-CV-6175, 2017 WL 168178, at *3 (N.D. Ill. Jan. 17, 2017) (quoting 735 Ill. Comp. Stat. Ann. § 5/2–1116(c)). Contributory fault exists where the plaintiff "acts without the degree of care that a reasonably prudent person would have used for his safety under like circumstances, and that action is the proximate cause of his injuries." *Baez v. Target Corp.*, 80 F. Supp. 3d 862, 869 (N.D. Ill. 2015) (citing *Coole v. Cent. Area Recycling*, 893 N.E.2d 303 (Ill. App. Ct. 2008)).

---

[6] The parties further dispute whether the "distraction exception" to the open and obvious doctrine applies. "The distraction exception applies 'where the possessor [of land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious.'" *Dunn*, 880 F.3d at 909 (quoting *Bruns*, 21 N.E.3d at 691). The distraction exception reverses the open and obvious doctrine's effect on the duty analysis: "'[W]hereas operation of the open and obvious rule negatively impacts the foreseeability and likelihood of injury, application of an exception to the rule positively impacts the foreseeability and likelihood of injury.'" *Id.* (quoting *Bruns*, 21 N.E.3d at 691). However, because the Court declines to apply the open and obvious doctrine at the summary judgment stage, it need not address whether the distraction exception would apply.

"[D]etermining [contributory] fault ordinarily is a question for the trier of fact and 'rarely' is decided as a matter of law." *Id*. (collecting cases); *see also Trotter v. Anderson*, 417 F.2d 1191, 1192 (7th Cir. 1969) ("The issue of contributory negligence is ordinarily not susceptible to summary adjudication and generally should be resolved in the ordinary manner at trial."). In particular, when determining the plaintiff's contributory negligence depends on disputed facts, it is "for the trier of fact to decide." *Baez*, 80 F. Supp. 3d at 870. However, in "rare cases," *id*. at 869, it "become[s] a question of law 'when all reasonable minds would agree that the evidence and the reasonable inferences therefrom, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.'" *Coole*, 893 N.E.2d at 309 (quoting *Basham v. Hunt*, 773 N.E.2d 1213, 1226 (Ill. App. Ct. 2002)).

Wendy's argues that Knauss was contributorily negligent as a matter of law because she acted unreasonably in "not looking directly in front of her" as she walked. Defs.' Mem. Supp. at 12. According to Wendy's, if Knauss had been looking directly in front of her, she would have seen and avoided the pothole. *Id*. Knauss argues that, contrary to Wendy's assertion, the parties have in fact agreed that Knauss was looking in front of her as she walked. Pl.'s Mem. Opp. at 14. Knauss further claims that the pothole's visibility is in dispute, thus precluding summary judgment on this ground. *Id*.

There are two problems with Wendy's contributory negligence argument. First, as Knauss notes, the parties have agreed that she was looking directly in front of her as she walked and did not see the pothole. Defs.' LR 56.1(a)(3) Stmt. ¶ 19; *see also* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 13 ("[Knauss] was looking at the door and looking at the ground in front of her immediately before and at the time she fell."); Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 13. Second, as discussed above, whether Knauss would have seen the pothole even if she had been looking at the ground directly

9

in front of her is hotly contested. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 24 ("Sesko testified that . . . [the pothole] is plainly obvious and it could be avoided."); Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12 ("Knauss testified that . . . the pothole [ ] blend[ed] in with the parking lot surface."). Accordingly, Knauss's contributory negligence is a question of fact for the jury, and Wendy's motion for summary judgment as to this issue is denied. *See Baez*, 80 F. Supp. 3d at 870.

## Conclusion

For the foregoing reasons, Wendy's motion for partial summary judgment [46] is denied. A status hearing will be held on 10/9/18 at 9:00 a.m.

**IT IS SO ORDERED.**          ENTERED 9/20/18

_____
**John Z. Lee**
**United States District Judge**